UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  19-cr-80141-RUIZ/MATTHEWMAN

UNITED STATES OF AMERICA,

　　　　Plaintiff,

v.

EDGAR ARMANDO BENITEZ,

　　　　Defendant.

_____/

FILED BY____KJZ____D.C.

**Jun 22, 2021**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON THE GOVERNMENT'S MOTION FOR AN ORDER REQUIRING THE INVOLUNTARY TREATMENT OF THE DEFENDANT TO RESTORE COMPETENCY [DE 37]

This cause is before the Court upon the Government's Motion for an Order Requiring the Involuntary Treatment of the Defendant to Restore Competency [DE 37] ("*Sell* Motion"). Defendant, Edgar Armando Benitez ("Defendant" or "Defendant Benitez") has filed a response [DE 44], and no reply was filed. The Government's *Sell* Motion was referred to the undersigned by the Honorable Rodolfo A. Ruiz, II, United States District Judge. [DE 38]. The Court held several hearings on this matter, as discussed below. The matter is now ripe for review.

## I.　　INTRODUCTION

Defendant has been charged by Indictment [DE 3] with possession with intent to distribute 500 grams or more of methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1), which offense carries a ten-year mandatory minimum prison sentence and a maximum of life imprisonment upon conviction. Investigating agents originally received information that Defendant would be transporting approximately five kilograms of crystal methamphetamine to Palm Beach County by commercial bus on July 13, 2019. [DE 1].  Defendant was arrested on July

1

13, 2019 when he was found to be carrying 4,121.07 grams of methamphetamine, and he was subsequently charged in federal court. *Id.*

On September 5, 2019, Defendant filed an unopposed motion for a competency examination. [DE 9]. This Court ultimately determined that Defendant was incompetent to proceed and committed him to the custody of the Attorney General for treatment on February 2, 2020. [DE 19]. Defendant is currently in custody and is being held at the Federal Medical Center at Butner, North Carolina ("FMC Butner").

Defendant remains incompetent to proceed and has refused all psychiatric medication while in custody. The parties agree that Defendant is currently incompetent to proceed, but they disagree as to whether he should be involuntarily medicated in an effort to restore him to competency. Accordingly, the Government is now seeking an Order from this Court that Defendant be involuntarily medicated by the medical staff at FMC Butner in an effort to restore him to competency, pursuant to Title 18 United States Code, Section 4241 and *Sell v. U.S.*, 539 U.S. 166 (2003). Defendant opposes the Government's *Sell* Motion.

Under *Sell,* there are four factors which the Government must prove by clear and convincing evidence to obtain a court order to involuntarily medicate a defendant in an effort to restore the defendant to competency. As is appropriate in these cases, the medical staff at FMC Butner requested that the Court initially address the first threshold *Sell* factor before requiring them to prepare and submit a proposed treatment plan for the Defendant. [DE 30, pp. 3-4, para. 7-8]. This is because, if the Court were to find that the Government had not met the first threshold *Sell* factor, then FMC Butner would not have to utilize scarce medical resources to prepare a  proposed treatment plan addressing the remaining three *Sell* factors. After hearing from the parties and addressing the first *Sell* factor, this Court previously found that the Government had proven by

clear and convincing evidence the existence of that factor, that is, that the Government has a sufficient interest in prosecuting Defendant. [DE 35].  No objections or appeal have been filed in relation to that prior Order of the Court, and that prior Order [DE 35] is incorporated herein.

Accordingly, this Report and Recommendation addresses the remaining three *Sell* factors. In order to properly address the Government's pending *Sell* Motion [DE 37] and decide the three remaining *Sell* factors, the Court has held two evidentiary hearings and considered the reports, testimony, and opinions of the  medical experts, as well as all relevant exhibits.

## II.     BRIEF SUMMARY OF THE EXPERTS' REPORTS

The first report was authored by Dr. Dawn Graney, Psy.D., on December 12, 2019. [Govt. Ex. 5, DE 52-5]. Dr. Graney, a forensic psychologist who was not called to testify at the evidentiary hearing, diagnosed Defendant Benitez with Unspecified Schizophrenia Spectrum and Other Psychotic Disorder. [Govt. Ex. 5, DE 52-5, p. 8]. Dr. Graney opined that Defendant was incompetent to proceed. *Id.* Dr. Graney also opined that there is a substantial probability that, within a period of treatment in an in-patient setting, such as provided for in Title 18 U.S.C. 4241(d), Defendant's mental health symptoms will improve sufficiently so that he can be restored to competency to proceed in the foreseeable future. [Govt. Ex. 5, DE 52-5, p. 9]. Dr. Graney's report was issued in 2019 and dealt with the earlier competency issue. Dr. Graney's report did not address whether Defendant should be involuntarily medicated pursuant to *Sell.*

The second report was issued on October 20, 2020, by Dr. Evan Du Bois, Psy.D., a clinical psychologist at FMC Butner. [Govt. Ex. 1, DE 52-2]. As previously found by Dr. Graney, Dr. Du Bois opined that Defendant suffers from Unspecified Schizophrenia Spectrum and Other Psychotic Disorder and remained incompetent to proceed. [Govt. Ex. 1, DE 52-2, p. 8].  Dr. Du Bois opined that, without Defendant taking psychiatric medication, it does not appear that there is a substantial

probability in the foreseeable future that Defendant will attain the capacity to permit the proceedings to go forward. [Govt. Ex. 1, DE 52-2, p.8]. However, Dr, Du Bois testified that, as a psychologist, he does not prescribe psychiatric medication, does not make a recommendation as to whether someone should be medicated, and does not determine the type of medication. He therefore referred Defendant to Dr. Graddy, the Chief Psychiatrist at FMC Butner. Further, and important to the Court's resolution of the Government's *Sell* Motion, Dr. Du Bois stated in his report as follows:

> Additionally, consultation with the Chief Psychiatrist has indicated involuntary medication for the purposes of competency restoration is not appropriate.

[Govt. Ex. 1, DE 52-2, p. 8].

The third report is a Treatment Plan Memorandum [Govt. Ex. 3, DE 52-3] dated January 11, 2021 by Dr. Logan Graddy, M.D., the Chief Psychiatrist at FMC Butner, together with the FMC Butner Sell Appendix [Govt.'s Ex. 4, DE 52-4], which Dr. Graddy co-authored, and an article which he relied upon in issuing his opinions entitled "The Sell Effect: Involuntary Medication Treatment is a 'Clear and Convincing' Success" [Govt. Ex. 2, DE 52-1]. Dr Graddy opined, consistent with Dr. Graney and Dr. Du Bois, that Defendant's diagnosis is Unspecified Schizophrenia Spectrum and Other Psychotic Disorder and that Defendant remains incompetent to proceed. [Govt. Ex. 3, DE 52-3]. In his Treatment Plan Memorandum, and important to the Court's resolution of the Government's *Sell* Motion, Dr. Graddy opined:

> A population of patients similar to this patient do generally respond to medication and can be restored to competency. But, in this particular situation the record is not consistent with a therapeutic response to medication, and the diagnosis is uncertain. Therefore, I have no opinion as to whether involuntary medications are substantially likely to render Mr. Benitez competent to stand trial.

[Govt. Ex. 3, DE 52-3].

Finally, Defendant has also been evaluated by a defense expert, Dr. Daniel Bober, D.O., a psychiatrist, who authored his own report. *See* Def. Ex. 1, DE 56. Dr. Bober stated that he could not opine as to whether forced medication will render Defendant competent to proceed.   However, he did opine that the risks of forced medication on Defendant outweigh the potential benefits.

### III.   THE *SELL* EVIDENTIARY HEARING

The Court held a lengthy two-day evidentiary hearing on the Government's *Sell* Motion on May 10 and May 26, 2021. [DEs 53, 55]. Defendant appeared at the hearing via Zoom VTC from FMC Butner. Based on concerns related to the COVID-19 pandemic, counsel for Defendant waived his client's personal presence in court for both hearings and agreed to Defendant's appearance via Zoom VTC, which the parties and the Court agreed was in Defendant's best interest. The Court found, pursuant to the CARES Act and Chief Judge Moore's Administrative Orders, that the hearings could not be further delayed without serious harm to the interests of justice and accordingly proceeded by VTC for both hearings.

Dr. Du Bois, Dr. Graddy, and Dr. Bober all testified via Zoom VTC. Dr. Du Bois was recognized as an expert in clinical psychology. Dr. Graddy and Dr. Bober were recognized as experts in the field of psychiatry. There were no objections raised by the parties as to the qualifications of the three experts, and the Court finds them all to be well-qualified as experts as proffered by the parties. The Court has carefully considered the testimony of the three experts and has determined their credibility in reaching its findings and recommendations.

**Dr. Du Bois:**

Dr. Du Bois, a Clinical Psychologist at FMC Butner, was the first Government witness, and he testified on May 10, 2021. Dr. Du Bois evaluated Defendant Benitez over a lengthy period of time, beginning in June 2020, and he has had numerous, serial interviews with Defendant. Dr.

Du Bois was the primary clinician or doctor for Defendant Benitez. According to Dr. Du Bois, Defendant remained incompetent to proceed, Defendant's condition has not improved since he arrived at FMC Butner, and Defendant has refused to participate in therapeutic programs offered at FMC Butner. Defendant also refuses all psychiatric medication. Dr. Du Bois stated that Defendant would benefit from psychiatric medication. He also stated that, with regard to Defendant's prognosis, "…without taking psychiatric medication it does not appear that there is a substantial probability in the foreseeable future Mr. Benitez will attain the capacity to allow the proceeding to go forward." [Govt. Ex. 1, DE 52-2, p. 8].

Dr. Du Bois testified that there were not any less intrusive means than medication available to restore Defendant to competency because Defendant had refused to participate in the therapeutic programs offered at FMC Butner and had refused all psychiatric medication. According to Dr. Du Bois, individuals with a psychiatric disorder like Defendant Benitez who are prescribed psychiatric medication are, in most cases, restored to competency. Specifically, in his personal experience, approximately 75 out of 100 of his patients, or 75%, who have been treated with psychiatric medication ultimately become competent. He agreed with the medical literature and opined that 75% to 80% of patients who have a diagnosis similar to Defendant Benitez and are treated with psychiatric medication ultimately become competent.

Dr. Du Bois opined that it was in Defendant Benitez's medical best interests to be prescribed psychiatric medication. However, as a psychologist, Dr. Du Bois stated that he cannot prescribe medication and does not make a recommendation as to whether someone should be medicated or the type of medication, as that is up to the Chief Psychiatrist, Dr. Graddy. Therefore, he referred Defendant to Dr. Graddy, the Chief Psychiatrist at FMC Butner, for medication. Dr. Du Bois also testified, as noted in his report, that in his consultation with the Chief Psychiatrist,

6

Dr. Graddy, he had been advised by Dr. Graddy that involuntary medication of Defendant Benitez for the purpose of restoring competency was "not appropriate."

Further, upon cross-examination by defense counsel, Jason Kreiss, Esq., Dr. Du Bois readily acknowledged that he had received an email from Dr. Graddy dated November 30, 2020 at 10:25 a.m., in which Dr. Graddy asked him, "do you know why they are recommending Sell when we don't"?". Dr. Du Bois responded "no" to that email.

**Dr. Graddy:**

Dr. Graddy, the Chief Psychiatrist at FMC-Butner, testified on May 10, 2021 regarding Defendant Benitez. His opinions were supported by his two-page treatment plan Memorandum [Govt Ex. 3, DE 52-3], the FMC Butner Sell Appendix which he co-authored [Govt. Ex. 4, DE 52-4], an article entitled "The Sell Effect: Involuntary Medication Treatment is a 'Clear and Convincing' Success" [Govt. Ex. 2, DE 52-1], and other medical journal articles such as the 2020 Pirelli and Zaph article from the *Journal of Forensic Psychiatry Research and Practice.*

As to the key issue before the Court, Dr. Graddy testified that he has no opinion in this case whether the medication he recommends is substantially likely to render Defendant competent to stand trial. He acknowledged and stood by his October 29, 2020 treatment note regarding Defendant Benitez, which stated:

> The etiology of the psychosis is unknown. The history of response to treatment is unknown. Administering medication may result in an improvement of his symptoms but his previous response to treatment is unknown and with this limited information I cannot recommend involuntary medication at this time.

Dr, Graddy testified that he cannot render an opinion as to whether Defendant would be in the 75% to 80% category of patients who regain competency after being administered psychiatric medications. He testified that the factors that separate Defendant from the 75% to 80% of patients who are restored to competency with psychiatric medication are 1) Defendant's history of being

observed previously in the BOP and not having mental illness; 2) the period of time beginning in 2019 during which Defendant presented with clear and obvious mental illness; 3) Defendant's history of drug use; and 4) his history of possible head trauma. Dr. Graddy testified that all of those factors give him pause to put Defendant in the 75% to 80% category and also influenced him to have no opinion on the restorability of Defendant if involuntarily medicated.

Dr. Graddy acknowledged writing a November 30, 2020 email to Dr. Du Bois in which he asked Dr. Du Bois why the Government was recommending *Sell* involuntary medication when "we don't." And, Dr. Graddy testified that this November 30, 2020 email reflected his "decision" at that time.

Dr. Graddy also reiterated his opinion contained in his January 11, 2021 Treatment Plan Memo [Govt. Ex. 3, DE 52-3], which stated that, in Defendant Benitez's case, the record is not consistent with a therapeutic response to medication, and the diagnosis is uncertain. Thus, he has no opinion as to whether involuntary medications are substantially likely to restore Defendant to competency to stand trial. Dr. Graddy testified that he cannot place Defendant Benitez in a population where he can say with 75% to 80% certainty that Defendant will be restored to competency with involuntary medication.

Dr. Graddy further testified that, as Chief Psychiatrist at FMC Butner, he has an obligation to guard his resources and be very careful about his recommendations because he has to consider the entire FMC Butner population, not just Defendant. He testified that he has come up with an algorithm for patients which creates "somewhat arbitrary" rules for himself as to when and where he should draw the line on his opinions regarding any patient's potential restorability. In Defendant's case, based on all the factors he considered, he simply cannot opine that involuntary medication is substantially likely to restore Defendant to competency to stand trial.

8

Dr. Graddy explained that, if he were to administer medication to Defendant, his proposed course of treatment would be the administration of Haloperidol (Haldol)[1] beginning at the lowest dose and then steadily increasing as Defendant's response to the medication is monitored to the appropriate therapeutic dosage via intramuscular injection. Additionally, if needed, treatment could involve adjunctive treatments such as anticholinergic, benzodiazepines, or mood stabilizers. Dr. Graddy testified that he did not believe there to be any effective alternative treatments and that injections are necessary because Defendant will not comply with the oral administration of medication. Dr. Graddy testified that the dosage, frequency, and route of administration of the medication are within the standard of care for the treatment of schizophrenia.

According to Dr. Graddy, from a humanitarian point of view, psychiatric medication for Defendant is medically necessary and appropriate for him as a human being to allow him to attain some measure of his former life. Specifically, he opined that the administration of Haloperidol, in conjunction with the medical treatment he is recommending, is the best medical means to attempt to restore Defendant's competency. In discussing Defendant, Dr. Graddy testified the he sees a very great need for treatment. If Defendant wanted treatment, the medication he is recommending would be "one-hundred-percent" medically appropriate. However, based on numerous factors, he cannot opine that there is a substantial likelihood that the involuntary medication of Defendant will restore him to competency.

Finally, Dr. Graddy testified that side effects are very rare for this type of medication, and that any potential side effects Defendant might encounter could likely be handled by the medical staff at FMC Butner. He stated that he has no doubts as to the ability of the medical staff at FMC Butner to care for Defendant should he be medicated. However, he did acknowledge the possibility

---

[1] Dr. Graddy testified that Haloperidol is the generic name for Haldol.

of side effects for Defendant and considered possible side effects as a factor underlying his opinions in this case.

**Defense Expert Dr. Bober**:

Dr. Bober, a psychiatrist, testified on May 26, 2021, as a defense witness. He testified that there are side effects to the proposed treatment plan. He explained that some of these are serious and permanent, such as tardive dyskinesia. Dr. Bober opined that it is unknown whether Defendant would benefit from the medication as there is no past clinical data showing how Defendant responds to medication. Given these uncertainties and given the fact that Defendant does not pose a risk of harm, Dr. Bober concluded that the risks of forced medication outweighed the benefits. He further concluded that he could not opine on whether forced medication would render Defendant competent to stand trial.

## IV.   ANALYSIS

In *Sell v. U.S.*, the Supreme Court held that, under limited circumstances, the Fifth Amendment Due Process Clause permits the Government to administer medication to a defendant, against his will, to restore him to competency. For this to happen, the court must find the following: (1) the Government has important interests in adjudicating the defendant; (2) involuntary medication would significantly further those interests; (3) involuntary medication is necessary to further the Government's interests; and (4) it is medically appropriate, *i.e.*, it is in the defendant's best medical interest given his medical condition. *Sell*, 539 U.S. at 180-81. The Government bears the burden of proving the necessary factual findings by clear and convincing evidence. *U.S. v. Diaz*, 630 F.3d 1314, 1331-32 (11th Cir. 2011). In *Sell*, the Supreme Court noted that instances in which involuntary medication is appropriate "may be rare." 539 U.S. at 180. The Eleventh Circuit has also noted the Supreme Court's comment that involuntary medication "may be rare." *U.S. v.*

*Diaz*, *supra*, 630 F.3d at 1331; *See also, U.S. v. Brown*, 820 Fed. Appx 214, 221 (4th Cir. 2020) ("The forcible medication of a defendant for the purpose of making him competent to stand trial is a drastic step that must pass a demanding test.").

The Supreme Court directed that, before the Court addresses these issues, it should first consider whether the Government may involuntarily medicate the defendant for other reasons. Specifically, a court should ordinarily determine whether the Government seeks, or has first sought, permission for forced administration of drugs on the grounds set forth in *Washington v. Harper*, 494 U.S. 210 (1990); and, if not, why not. *Sell*, 539 U.S. at 183. In *Harper*, the U.S. Supreme Court held that an inmate with a "serious mental illness" may be treated "with antipsychotic drugs against his will, if the inmate is dangerous to himself or others [while confined] and the treatment is in the inmate's medical interest." *Harper*, 494 U.S. at 227. Here, all of the experts agree that Defendant Benitez does not meet the *Harper* standard. Moreover, the Government is not seeking involuntary medication of Defendant on *Harper* grounds. Therefore, the Court finds that involuntary medication of Defendant Benitez pursuant to *Harper* is unavailable in this case.

Further, the evidence and testimony clearly show that Defendant refuses all psychiatric medication and that an order from this Court ordering the incompetent Defendant Benitez to take psychiatric medication or suffer contempt of court will be of no use. In this regard, in addition to the testimony and evidence, the Court's observations of Defendant's bizarre behavior over the course of several hearings clearly shows that an order from this court that Defendant take psychiatric medication with the threat of contempt will be of no benefit or effect. Therefore, the only option available to medicate Defendant in an effort to restore his competency is pursuant to *Sell.*

Further, the Court has previously found that the Government has proven by clear and convincing evidence the existence of the first *Sell* factor, that is, that the Government has a sufficient interest in prosecuting Defendant. [DE 35]. No objections or appeal were filed from that Order, and the Court stands by that Order and its findings therein. Thus, only the three remaining *Sell* factors are at issue here, and they are discussed below.

a. **The Second *Sell* Factor: Whether involuntary Medication Will Significantly Further the Government's Important Interests**

The second *Sell* factor requires the Court to determine whether involuntary medication will "significantly further" the Government's important interests. This factor is satisfied if the Government proves by clear and convincing evidence that medication is (1) "substantially likely to render the defendant competent to stand trial," and (2) "substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair." 539 U.S. at 181. This second *Sell* factor is the key factor in dispute in this case, and it is where the Government falls short of meeting its burden. Based on the record in this case, the Court finds that the Government has failed to establish the first part of this second *Sell* factor---that the involuntary medication of Defendant Benitez is substantially likely to render him competent to stand trial---by clear and convincing evidence.

The first important reason for this Court's finding is that the Government's key and most important witness, FMC Butner Chief Psychiatrist Dr. Graddy, testified that he simply cannot render an opinion as to whether involuntary medication of Defendant is substantially likely to render him competent to proceed to trial. Dr. Graddy also stood by his October 29, 2020 treatment note which stated that he could not recommend involuntary medication at that time. Dr. Graddy's opinion never wavered from his opinion in the October 29, 2020 treatment note.

A second important reason for this Court's finding is that Dr. Graddy stood by his November 30, 2020 email to Dr. Du Bois, in which Dr. Graddy asked why "they" [[the prosecutors are recommending *Sell* "when we don't." Dr. Du Bois responded "no" to Dr. Graddy's email. This is a clear admission by Dr. Graddy that he, and, by implication, Dr. Du Bois, are not recommending forced medication of Defendant pursuant to *Sell*. He testified at the hearing that this email statement was his "decision" in Mr. Benitez's case. Dr. Graddy was consistent in his opinion that involuntary medication pursuant to *Sell* was not recommended.

A third significant reason supporting this Court's finding is that Dr. Graddy stood by his January 11, 2021 Treatment Plan Memo [Govt. Ex. 3, DE 52-3] for Defendant in which he opined as follows: "…in this particular situation the record is not consistent with a therapeutic response to medication, and the diagnosis is unclear. Therefore I have no opinion as to whether involuntary medications are substantially likely to render Mr. Benitez competent to stand trial."

Fourth, the testimony of Dr. Graddy also supports this Court's finding. Dr. Graddy testified that Defendant's case is "very much in the gray area." He stated that he could not render an opinion whether Defendant would be in the 75% to 80% of patients who are rendered competent by psychiatric medications. He testified that there were several factors that separate Defendant from the 75% to 80% of patients who are restored to competency by psychiatric medication, and, further, that he cannot place Defendant in a population where he "can say with 75 to 80% certainty he will be restored to competency." The Court finds Dr. Graddy credible and credits his testimony in this regard.

The Government has argued that, even though neither Dr. Graddy nor any other witness called by the Government opined that the involuntary medication of Defendant is substantially likely to render him competent to proceed to trial, this Court can nonetheless make that missing

finding. The Government points to the fact that Dr. Graddy testified that he has no opinion in this case that Defendant is substantially likely to be rendered to competency if involuntarily medicated and Dr. Graddy leaves that decision to the Court. There are several problems with this position.

First, as stated by the undersigned at the hearing during Dr. Graddy's testimony, this Court understands and respects that Dr. Graddy does not want to get involved in making a **legal** decision, and the Court does not expect him to do so; however, this Court must rely on expert medical doctors to give us their expert **medical** opinions to allow the Court to make its legal decision. The Court's role at a *Sell* hearing is to weigh the testimony, opinions and evidence presented, assess credibility of the witnesses, and determine whether the Government has established the four *Sell* factors by clear and convincing evidence. The Court's role is not that of the Chief Psychiatrist at FMC Butner, and the Court cannot make medical decisions for him. The Court can weigh conflicting medical opinions and evidence, assess credibility, and come to a finding based thereon, but the Court cannot issue its own medical opinion. The Court makes **legal** decisions and is not in the business of issuing **medical** opinions; that is for the medical experts.

However, in this case, despite not having the requisite medical opinion from Dr. Graddy or from any other expert that the involuntary medication of Defendant Benitez is substantially likely to restore him to competency, the Government wants this Court to extrapolate and glean from **general** studies and data sufficient information to allow the Court to formulate the **specific** missing medical opinion that, in Defendant's particular case, he is substantially likely to be restored to competency to stand trial if he is involuntarily medicated. This the Court simply cannot do.

As Dr. Graddy testified below, his Treatment Plan Memo is **specific** to Defendant, whereas the Appendix and other materials and data he referenced are more of a **general** guideline. Under

*Sell*, this Court must make a finding specific to Defendant Benitez. The general studies and data are informative and interesting, but how is this Court to find, by clear and convincing evidence, that Defendant falls within the 75% to 80% of the restorable population—as opposed to the 20% to 25% of the non-restorable population—without a specific, well-founded, expert medical opinion regarding Defendant's substantial likelihood of restorability? While the statistics, data, articles and information presented which discuss restorability rates in general can certainly be **corroborative** and **supportive** of a medical expert's opinion, they cannot act as  the  **replacement** for a medical expert's opinion.[2] In effect, the Government asks this Court, in what Dr. Graddy has described as a "gray area" case, to ignore Dr. Graddy's testimony, including but not limited to, testimony that he cannot say with 75% to 80% certainty that Defendant Benitez will be restored to competency if involuntarily medicated, and then make that finding by clear and convincing evidence based on general studies, data, statistics and articles. The Government additionally asks this Court to ignore Dr. Graddy's "non-opinion" on the crucial issue of Defendant's restorability and to instead look at general studies and general statistics to decide the issue. This the Court cannot do.

Furthermore, Dr. Graddy, a distinguished psychiatrist, has testified in many cases in his career, and the Court is aware of numerous reported opinions where Dr. Graddy readily came to a medical opinion that the involuntary medication of a defendant was substantially likely to render the defendant  competent to proceed to trial—something he is unable to do in Defendant Benitez's case. Thus, this is not truly a matter of him leaving the decision to the Court, as argued by the

---

[2] For example, in *U.S. v. Diaz*, 630 F.3d 1314 (11th Cir. 2011), both Dr. Pietz and Dr. Sarrazin opined that the recommended psychiatric medication "has a substantial likelihood of rendering Diaz competent to stand trial." *Id.* at 1320. Their opinions were supported and buttressed by available studies and data, *Id.* at 1332, but they held and expressed their own opinions that there was a substantial likelihood of restorability, which is in stark contrast to Dr. Graddy in the instant case.

Government, but rather a clear inability by Dr. Graddy to render the requisite opinion in this case when Dr. Graddy has done so in many other cases. For example, in a prior case before the undersigned, Dr. Graddy testified that involuntary medication of a defendant would likely allow him to obtain competency and allow Defendant Ferguson to sit through court proceedings. *U.S. v. Ferguson*, 04-cr-14041-Middlebrooks/Matthewman, 2018 WL 2316726, \*3-5 (S.D. Fla. May 22, 2018). Dr. Graddy further testified in *Ferguson* that his treatment plan would be substantially likely to allow the defendant to obtain competency. *Id.*

Moreover, a quick and non-exhaustive search of reported court opinions clearly shows that Dr. Graddy has often opined on the seminal and requisite issue upon which he cannot opine in Defendant Benitez's case. *See, e.g.*, *U.S. v. Rodriguez*, 09-cr-20608-Moore/McAliley, 281 F. Supp. 3d 1284, 1299 (S.D. Fla. Dec. 1, 2017) ("Both in his report and at the hearing, Dr. Graddy opined 'with reasonable medical certainty' that his proposed treatment plan is substantially likely to restore Rodriguez's mental competency"); *U.S. v. Sherrill*, 2:17-cr-00003, 439 F. Supp. 3d 1007, 1012 (M.D. Tenn. Dec. 12, 2020) ("Dr. Logan Graddy, Chief Psychiatrist at FMC Butner, opined that 'with reasonable medical certainty, involuntary medications are substantially likely to render Mr. Sherrill competent to stand trial"); *U.S. v. Martikainen*, 1:19-cr-128-MOC/WCM, 2021 WL 881263, \* 5 (W.D. N.C. Mar. 9, 2021) ("Dr. Graddy opined that it was highly likely that Defendant would be restored within 6 months"); *U.S. v. Coy*, 991 F.3d 924, 927 (8th Cir. 2021) (Dr. Grady stated: "In my opinion, with reasonable medical certainty, involuntary medications are substantially likely to render Mr. Coy competent to stand trial."). This sampling of reported cases shows that Dr. Graddy is not at all shy about issuing his opinion in an appropriate case, something he simply cannot do in Defendant Benitez's case. Without Dr. Graddy's supporting **medical**

opinion, which is clearly lacking in this case, the Government simply cannot prevail on its *Sell* Motion.

Dr. Graddy, the only psychiatrist called by the Government, and the only expert called by the Government who is authorized to prescribe psychiatric medications, could not state with reasonable medical certainty that involuntary medication of Defendant Benitez is substantially likely to restore him to competency to stand trial. In fact, no witness who testified before this Court would render such an opinion. Moreover, Dr. Graddy affirmatively wrote and stated that he did not understand why they [the prosecutors] were recommending *Sell* "when we don't"; that he cannot recommend involuntary medication "at this time"; that, in Defendant's case, the record is not consistent with a therapeutic response to mediation, the diagnosis is uncertain, and, therefore, he has no opinion as to whether involuntary medications are substantially likely to render Defendant competent to stand trial; and, that he cannot place Defendant in a population where he can say with 75% to 80% certainty that he will be restored to competency. In the face of all of this, the undersigned declines the Government's request that this Court issue the necessary and requisite **medical** opinion that Dr. Graddy, a highly qualified and credible expert psychiatrist, refuses to issue as to Defendant.

The Court has struggled with this finding because it is clear that Defendant Benitez is mentally incompetent, mentally ill, and would likely benefit as a human being from psychiatric medication. From a personal point of view, this Court wants Mr. Benitez to take the recommended psychiatric medications to improve his life and mental well-being. But that is simply not the exacting and rigorous *Sell* test. While Dr. Graddy did testify that, from a humanitarian perspective, psychiatric medication for Defendant is the medically necessary and appropriate treatment for him as a human being to attain some measure of his previous life, that he sees a very great need for

psychiatric treatment of Defendant, and that, if Defendant wanted treatment, psychiatric medication would be "one-hundred-percent" medically appropriate, this does not lead to a finding from this Court that Defendant should be forcibly and involuntarily medicated under the strict *Sell* standard. Voluntarily taking psychiatric medications to improve one's life is one thing and is to be encouraged; however, involuntarily and forcibly administering psychiatric drugs to an unwilling person is quite another matter which raises significant constitutional issues as recognized by the Supreme Court in *Sell*.

Moreover, Defendant called his own expert psychiatrist, Dr. Bober, who testified that he could not opine whether forced medication will render Defendant competent to proceed. The Court finds Dr. Bober credible on this portion of his testimony and opinions and credits his opinion in this specific regard.

The Eleventh Circuit Court of Appeals has found that expert testimony from a treating forensic psychologist and psychiatrist, supported by statistical studies, "strongly demonstrate[d] a finding that the second *Sell* factor had been established." *U.S. v. Diaz*, 630 F.3d 1314, 1332 (11th Cir. 2011). In *Diaz*, both Dr. Pietz and Dr. Sarrazin provided expert opinions that there was a substantial likelihood that anti-psychotic medication would restore Defendant Diaz to competency, and their opinions were supported and buttressed by statistics and data. In Defendant Benitez's case, the Government has presented such general statistical studies and data as their main evidence, rather than using statistical evidence to support or corroborate the opinion of an expert medical doctor that involuntary medication is substantially likely to restore Defendant's competency to proceed. Since the Government has no medical expert who opined that the involuntary medication of Defendant was substantially likely to restore him to competency to stand trial, they lack the strong "clear and convincing" evidence needed in this case.

18

As to the second part of the second *Sell* factor, that is, whether the proposed medication is substantially unlikely to have side effects that will interfere with the Defendant's ability to assist counsel in conducting a defense, Dr. Graddy's FMC Butner Sell Appendix [Govt. Ex. 4, DE 52-4] explains the possible side effects of antipsychotic medication. Dr. Graddy testified that the possibility of side effects was one of the factors he considered in issuing his opinions in this case. He opined that there is a possibility for neuromuscular (tardive dyskinesia) and metabolic side effects, but that Defendant would be monitored for all of these side effects and treated as appropriate. Further, he testified that medical staff would attempt to avoid side effects by using the lowest effective dose and that the medical staff at FMC Butner could readily handle any side effects Defendant may encounter. Dr. Bober, the defense expert psychiatrist testified that the risks for Defendant, in light of his medical and physical condition, outweigh any benefits.

The Court finds that Dr. Graddy was a credible witness as to the issue of side effects of psychiatric medication, including Haloperidol, and credits his testimony in that regard. The Court also finds Dr. DuBois' testimony and opinion on the issue of side effects of psychiatric medication to be credible and credits his testimony as well. The Court further finds Dr. Graddy's and Dr. Du Bois' testimony and opinions as to potential side effects for Defendant, including that side effects are rare and that, if Defendant encountered side effects, the medical staff at FMC Butner could readily and promptly deal with such side effects, to be very credible. Additionally, the Court finds that Dr. Bober's testimony and opinion that the side effects of psychiatric medication potentially faced by Defendant Benitez outweigh its benefits is not credible and contrary to the record evidence and other credible opinions, and the Court declines to credit such testimony and opinion of Dr. Bober.

Thus, had the Government proven by clear and convincing evidence the first element of the second *Sell* factor that involuntary medication of Defendant was substantially likely to render him competent to stand trial (which it did not), the Court would concomitantly find that the Government had proven by clear and convincing evidence the second element of the second *Sell* factor that it was substantially unlikely that such medication would have side effects that would interfere significantly with Defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair. While the issue of side effects is essentially moot in light of the Court's earlier finding that the Government failed to prove by clear and convincing evidence the first element of the second *Sell* factor that involuntary medication was substantially likely to render Defendant competent to stand trial, the undersigned nonetheless makes this finding on the second element of the second *Sell* factor so there is a clear record in the event of any appellate review.

In sum, the Government has clearly failed to prove the first element of the requisite second *Sell* factor—that involuntary medication of Defendant is substantially likely to render him competent to stand trial—by clear and convincing evidence. Although this finding is fatal to the Government's motion, the Court will proceed to address the remaining two *Sell* factors to establish a full record in the event of any appellate review.

**b.  The Third Sell Factor: Whether Involuntary Medication is Necessary to Further an Important Government Interest**

The third *Sell* factor requires the Court to decide whether involuntary medication is necessary to further the Government's interests. The Court can authorize involuntary medication only if it first finds that there are no less intrusive treatments that are likely to achieve substantially the same result. *Sell*, 539 U.S. at 181. Both Drs. Du Bois and Graddy were credible witnesses and both testified that there is no alternative course of treatment available to assist Defendant in regaining competency. While Dr. Bober expressed some disagreement, the Court does not credit

20

Dr. Bober's testimony and opinion in this regard. Indeed, both Drs. Du Bois and Graddy testified that, during the period of time that Defendant has been committed to the Federal Medical Center at Butner, North Carolina, his condition has at best remained the same (which was poor when he arrived), and at worst has deteriorated. The doctors were clear that there are no less intrusive treatments that are likely to achieve Defendant's competency, given Defendant's refusal to participate in therapeutic programs, comply with medication, or to take medication orally. Dr. Graddy noted in his Appendix that antipsychotic medication is an essential element in the treatment of schizophrenia.

Accordingly, based upon the entire record before the Court, the Court finds that the Government has proven by clear and convincing evidence that the administration of antipsychotic medication is necessary to further the Government's important interests in this case. Again, this issue is moot in light of the Court's finding that the Government failed to meet its burden on the first element of the second *Sell* factor. However, for purposes of possible future appellate review and in order to provide a full record, the Court finds that, had the Government proven the first element of the second *Sell* factor (which it did not), the Court does find that the Government did prove the third *Sell* factor by clear and convincing evidence.

### c. The Fourth *Sell* Factor: Whether Medication is Medically Appropriate in Light of Defendant's Medical Circumstances

Lastly, under the fourth *Sell* factor, the Court must determine whether the forced medication of Defendant is "medically appropriate, *i.e.,* in the patient's best medical interest in light of his medical condition." *Sell*, 539 U.S. at 181. Drs. Du Bois and Graddy both testified at the hearing that the administration of antipsychotic medication to Defendant, in accord with the proposed treatment plan, is medically appropriate. The Court finds their opinions credible, and conversely does not credit Dr. Bober's opinion to the extent it conflicts with the opinions of Dr.

21

Graddy and Dr. Bober on this fourth *Sell* factor.  Dr. Graddy testified that the dosage, frequency, and route of administration are within the standard of care for the treatment of schizophrenia. He testified that he would recommend this course of treatment to anyone who presented with similar symptoms.

The Court finds that the medication and treatment regimen proposed by Dr. Graddy is medically appropriate and that his testimony and opinion on the point were credible. Furthermore, the treatment protocol outlined by Dr. Graddy details the various courses of action available should any adverse effects be detected. Dr. Graddy also emphasized that any negative effects of the medication should be easily detected, and the staff at FMC Butner are well-equipped to treat those side effects quickly. He specifically outlined the measures to be taken should side effects occur. Both Dr. Du Bois and Dr. Graddy considered the specific circumstances of Defendant Benitez's medical situation and determined that there is a very low risk of any adverse side effects and that any such side effects can be effectively treated by the medical staff at FMC Butner. The Court again credits their testimony and opinions.

Although the defense expert, Dr. Bober, came to a different opinion in this regard, the Court does not credit his testimony and opinions that the side effects of medication outweigh the benefit for Defendant or that the medication and treatment plan are not medically appropriate. Having considered these factors and the entire record, the Court finds that the Government has met its burden of showing by clear and convincing evidence that involuntary medication is medically appropriate in light of Defendant's circumstances. Again, this issue is moot in light of the Court's finding that the Government failed to meet its burden on the first element of the second *Sell* factor but issues its finding here to make a full record in the event of appellate review.

## V.       **CONCLUSION**

All of the experts agree that Defendant is mentally incompetent to proceed. The Court's several observations of the Defendant at various hearings support the experts' findings of Defendant's incompetency to proceed to trial. However, as to the Government's request that this Court order that Defendant be involuntarily medicated, the *Sell* standard is an exacting one. The Government has presented no expert opinion that, as to Defendant Benitez in particular, it is substantially likely that forced medication will render him competent to proceed to trial. The Government's reliance on general studies, data, articles and information is insufficient to meet its burden by clear and convincing evidence as to this first element of the second *Sell* factor. Accordingly, the Government has failed to establish all four *Sell* factors by clear and convincing evidence. Therefore, the Government's *Sell* Motion should be DENIED.

In light of the foregoing, the Court **RECOMMENDS** that the Government's Motion for an Order Requiring the Involuntary Treatment of the Defendant [DE 37], pursuant to Title 18 United States Code, Section 4241 and *Sell v. U.S.*, 539 U.S. 166 (2003), be **DENIED.**

## **NOTICE OF RIGHT TO OBJECT**

In light of the fact that Defendant is currently in FMC Butner and is not receiving any treatment while the *Sell* issue is before the Court, and to expedite this matter in the interests of justice, the Court shall shorten the time for objections pursuant to S.D. Fla. Local Magistrate Judges Rule 4(b). Accordingly, the parties shall have seven (7) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Ruiz. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and

Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

     **RESPECTFULLY ISSUED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 22nd day of June 2021.

WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE